CITY BANK & TRUST CO., CRETE, NEBRASKA, A NEBRASKA CORPORATION, APPELLANT, V. HELEN L. VAN ANDEL, APPELLEE.

368 N.W.2d 789

Filed June 7, 1985.   No. 84-127.

Adrian R. Fiala II, for appellant.

J. David Thurber of Doyle and Doyle, for appellee.

William B. Brandt and Robert J. Hallstrom of Brandt, Horan, Hallstrom & Sedlacek, for amicus curiae Nebraska Bankers Association.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

This is an action on a guaranty executed by the defendant, Helen L. Van Andel, on January 5, 1976, to secure indebtedness of her son, Ronald Van Andel, to the plaintiff, City Bank & Trust Co., Crete, Nebraska. The petition alleged that there was $94,819.82 due the bank on August 2, 1982, the date on which Ronald Van Andel and his wife, Pamela, filed a petition in bankruptcy. Through liquidation of collateral and payments by the debtor, the amount due the bank was reduced to $71,003.35,

which amount the plaintiff sought to recover under the guaranty.

The defendant's answer alleged that the plaintiff had sold collateral without notice to the defendant as required by Neb. U.C.C. § 9-504(3) (Reissue 1980). The trial court sustained the defendant's motion for summary judgment on this ground and dismissed the petition. The plaintiff has appealed.

The motion was heard upon the pleadings, the depositions of the president of the plaintiff bank and the defendant, documentary evidence including an affidavit by plaintiff's counsel, and testimony by defendant's counsel. Although the affidavit and testimony of counsel were received without objection to counsels' further participation in the case, we call the attention of counsel to Canon 5, DR 5-102(A), of the Code of Professional Responsibility, which provides that a lawyer upon learning that he ought to be called as a witness as to a contested matter shall withdraw from the conduct of the trial, and his firm, if any, shall not continue representation in the trial.

The plaintiff contends: (1) The district court erred in granting summary judgment because there are genuine issues of material fact; (2) The district court erred in failing to find that the defendant had waived her right to notice of the sale of the collateral or was estopped to rely upon the lack of notice as specified in § 9-504(3); and (3) The district court erred in finding that a notice of sale was required even though the collateral was perishable or threatened to decline speedily in value.

The record shows that the indebtedness of Ronald Van Andel to the plaintiff was delinquent in March of 1982. The Van Andels and the defendant were notified in a letter from the plaintiff dated March 22, 1982, that the loan was delinquent. Thereafter, William Fulton, the president of City Bank, and Ronald Van Andel, together with the Van Andels' attorney, J. David Thurber, attempted to "work out" the problems associated with the loan.

On May 17, 1982, Thurber wrote Fulton regarding City Bank's most recent offer to "work out" the Van Andels' delinquent debt situation. The letter stated that "Ron and Pam

will accept the transfer of the current indebtedness . . . to a 10-year note with a 3-year balloon and a variable interest rate. Helen VanAndel also will agree to secure the new 10-year note with unencumbered real estate in Seward County, Nebraska." In exchange the letter requested that the defendant be released from her obligations under any previous guarantees. A carbon copy of this letter was sent to the defendant. Subsequently, on June 29, 1982, City Bank sent copies of a promissory note, mortgage, financing statement/security agreement, and a letter outlining to Thurber, the Van Andels, and the defendant the agreed-upon transfer of indebtedness. By the terms of these documents, the Van Andels were to be extended credit in the amount of $80,000 with interest at the rate of 17 percent; the loan was to be secured by a mortgage on real estate owned by the defendant, and by equipment, livestock, and crops owned by the debtor.

On August 2, 1982, the Van Andels filed a voluntary petition in bankruptcy under 11 U.S.C. ch. 7 (1982). Thereafter, on August 17, 1982, Adrian Fiala, as attorney for City Bank, sent a letter to Thurber acknowledging receipt of the bankruptcy notice. The letter indicated that City Bank was "quite concerned" as to the status of its secured collateral and requested Thurber to notify the Van Andels that Fulton would be making a physical inventory of the collateral on August 19, 1982. The letter also inquired as to whether Thurber represented the defendant.

On August 17, 1982, Fiala sent a letter to the defendant demanding payment under the guaranty of the Van Andels' indebtedness. A copy of this letter was sent to Thurber. On August 20, 1982, Thurber sent a letter to Fiala stating that his office represented the defendant and that he may be contacted regarding the matter. From that point on the parties and the Van Andels, acting through their attorneys, undertook negotiations regarding the collateral.

On August 19, 1982, City Bank filed a request in the U.S. Bankruptcy Court for relief from the automatic stay, based on the alleged perishable condition of the livestock. The record contains a veterinarian's affidavit attesting to the sickly condition of the livestock concerned. Relief from the stay was

granted on September 15, 1982. Prior to that, on September 2, 1982, the Van Andels, after orally notifying City Bank and receiving no objection, sold a number of hogs at the Beatrice Sales Pavilion. City Bank then physically repossessed the remainder of the livestock on September 27 and November 22, 1982. In the first repossession, 7 mixed feeder pigs were sold at the Crete Livestock Market; the second time, 14 cows and 18 calves were sold. Although no specific written notice was given to the defendant of these sales, the defendant did supervise the loading of the livestock repossessed by City Bank on September 27, 1982. Fulton testified by way of deposition that "we did everything possible to jointly coordinate all activities of disposition of the collateral with you [Thurber] with verbal communication with Helen, Ron and Pam, and acknowledged the seriousness of the situation."

Throughout this time, lengthy conversations had begun, and there was correspondence between the attorneys, Van Andels, and the defendant concerning the equipment that was collateral. On January 6, 1983, Fiala notified the debtors, through a letter to Thurber, of the impending sale of equipment. The equipment was sold at a public auction on January 16, 1983.

Neb. Rev. Stat. § 25-1332 (Reissue 1979) provides that a motion for summary judgment shall be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." If there is a genuine issue of fact, summary judgment may not be granted. *Moore v. American Charter Fed. Sav. & Loan Assn.*, 219 Neb. 793, 366 N.W.2d 436 (1985). In reviewing a summary judgment this court must take the view of the evidence most favorable to the party against whom the motion is directed and give that party the benefit of all favorable inferences which may be drawn from the evidence. *Yankton Prod. Credit Assn. v. Larsen*, 219 Neb. 610, 365 N.W.2d 430 (1985); *Gall v. Great Western Sugar Co.*, 219 Neb. 354, 363 N.W.2d 373 (1985). The party moving for summary judgment has the burden of showing that no genuine issue as to any material fact exists; therefore, that party must produce

enough evidence to demonstrate his entitlement to a judgment if the evidence remains uncontroverted, after which the burden of producing contrary evidence shifts to the party opposing the motion. *Moore, supra; Gall, supra.* Summary judgment is an extreme remedy to be awarded only when the issue is clear beyond all doubt. *Yankton Prod. Credit Assn., supra.*

The record discloses that there are a number of genuine issues of material fact and that it was error to sustain the defendant's motion for summary judgment.

Principally of concern herein is the application of § 9-504(3), which provides in relevant part:

> Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . . .

The underlying purpose of the notice provision was stated in *First Nat. Bank of Omaha v. Kizzier*, 202 Neb. 369, 376, 275 N.W.2d 600, 604 (1979), where this court quoted:

> "Our first consideration in construing section 9-504 is to consider the reason for the notice provision. Obviously it is intended for the benefit and protection of the debtor. If he is given notice, he will have at least an opportunity to protect his interests by redemption, finding prospective purchasers for the property, or otherwise."

With but one exception the plaintiff does not claim that it gave written notice to the defendant of the several sales. Rather, City Bank contends that the defendant's conduct subsequent to default constituted a waiver of notice of sale or estopped the defendant from relying upon a defense of failure to give such notice.

In *Citizens State Bank v. Sparks*, 202 Neb. 661, 664, 276 N.W.2d 661, 663-64 (1979), this court stated the general rule:

> "Compliance with the Uniform Commercial Code for notification as to the disposition of collateral is a condition precedent to a secured creditor's right to recover a deficiency." Bank of Gering v. Glover, 192 Neb. 575, 223

N.W.2d 56.

> "* * * the burden of proof is on the secured party to prove compliance with the statutory requirements of notice and reasonableness of notice. * * * Failure to give notice is an absolute bar to the recovery of a deficiency." DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co., *supra*.

In other cases we have stated: "It is the rule in this jurisdiction that compliance with the notice provisions of the Uniform Commercial Code is a condition precedent to the right of a creditor to recover a deficiency judgment." (Citations omitted.) *First Nat. Bank & Trust Co. v. Hughes*, 214 Neb. 42, 47, 332 N.W.2d 674, 677 (1983); *Butte State Bank v. Williamson*, 215 Neb. 296, 338 N.W.2d 598 (1983); *Borg-Warner v. Watton*, 215 Neb. 318, 338 N.W.2d 612 (1983).

Although reasonable notice had not been given to the debtor in *Citizens State Bank*, this court continued:

> The ruling of the lower courts must stand unless the defendant's right to notice was waived by his subsequent conduct amounting to waiver or estoppel.
>
> . . . .
>
> While not denying that a case of waiver or estoppel could arise under section 9-504(3), U.C.C., we do not feel the circumstances in this case rise to that level.

202 Neb. at 664-65, 276 N.W.2d at 664.

We have held that in a suit for conversion a jury could find that the course of dealing between the bank and a seller amounted to a waiver of notice where it implied consent and authority for the sale of grain free of the bank's security interest. In *State Bank v. Scoular-Bishop Grain Co.*, 217 Neb. 379, 349 N.W.2d 912 (1984), we set forth the general definition of waiver as contained in previous opinions:

> " 'Waiver' has been defined as a voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed; the voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intent that such right shall be surrendered and such person

forever deprived of its benefits; *or such conduct as warrants an inference of the relinquishment of such right*; or the intentional doing of an act inconsistent with claiming it."

*Id*. at 386, 349 N.W.2d at 916; *Five Points Bank v. Scoular-Bishop Grain Co.*, 217 Neb. 677, 350 N.W.2d 549 (1984).

In *Simmons Mach. Co. v. M & M Brokerage, Inc.*, 409 So. 2d 743, 748 (Ala. 1981), the Alabama Supreme Court held that a debtor may waive his right to notice under U.C.C. § 9-504(3) after default. The court concluded:

> We are mindful that a default debtor's right to notice of the intended disposition of the secured collateral is one of the most important rights affording a debtor protection of his interest in the secured collateral under the U.C.C. Accordingly, we hold that a post-default waiver by a debtor of his right to notice under § 7-9-504(3) can be made where the debtor knowingly and specifically agrees to waive his right to such notice.

The Alabama court, however, specifically rejected *Nelson v. Monarch Invest. Plan of Henderson, Inc.*, 452 S.W.2d 375 (Ky. 1970), insofar as it recognized an implicit waiver by the act of a debtor.

In *Commercial Credit v. Wollgast*, 11 Wash. App. 117, 521 P.2d 1191 (1974), the Court of Appeals for the State of Washington held that a creditor's failure to give timely notice of a sale did not deprive the creditor of its right to a deficiency judgment. The court reasoned:

> In the case at bar, defendant had voluntarily relinquished possession of the collateral because he had been unable to sell the machines. The purpose of relinquishment was to allow plaintiff to sell them. Furthermore, defendant had notice of plaintiff's intention to sell the snowmobiles, made no response, and was financially unable to take any action. Under these circumstaces [sic] the holding in *Nelson v. Monarch Inv. Plan of Henderson, Inc., supra*, would appear pertinent. In that case, the debtor voluntarily transferred possession of the collateral to the plaintiff, indicating that he had no

further interest in it and did not intend to bid on it. There was no evidence that any notice to him would have resulted in a higher sales price. The Kentucky court concluded that the debtor either waived his right to notice or was estopped to claim damage by reason of the creditor's failure to give it. *Grant County Tractor Co. v. Nuss, supra*. We think that ruling is applicable here.

*Id.* at 123-24, 521 P.2d 1195-96.

The record in this case is replete with correspondence between individuals involved which, when combined with the actions of the Van Andels and the defendant, might be found to be a waiver or estoppel under § 9-504(3). There are genuine issues of material fact present which prevent the case from being decided upon a motion for summary judgment.

The third assignment of error is whether a notice of sale is required where the collateral is perishable. As quoted previously, § 9-504(3) requires notification "[u]nless collateral is perishable or threatens to decline speedily in value . . . ." This provision was applied in *United States v. Mid-States Sales Company*, 336 F. Supp. 1099 (D. Neb. 1971), where the court considered conflicting evidence as to the condition of the cattle therein, ultimately concluding that the cattle involved were not "perishable," nor did they threaten to "decline speedily in value," within the meaning of the statute. In this case the condition of the livestock is a question of fact. If indeed they were perishable, a notice of sale was not required under the language of § 9-504(3).

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.