**FARMERS STATE BANK OF LEEDS,**
North Dakota, Plaintiff, Appellee, and
Cross-Appellant,

v.

**Vernon THOMPSON and Donald
Thompson, Defendants,
Appellants, and Cross-Appellees.**

Civ. No. 10898.

Supreme Court of North Dakota.

Aug. 15, 1985.

J. Thomas Traynor, Jr., of Traynor, Rutten & Traynor, Devils Lake, on brief, for plaintiff, appellee, and cross-appellant.

Joseph Dietchman, of Dietchman & Steffan, Minnewaukan, on brief, for defendants, appellants, and cross-appellees.

VANDE WALLE, Justice.

Vernon Thompson and Donald Thompson appealed from a deficiency judgment of the county court of Benson County awarding Farmers State Bank $3,649 plus interest, costs, and disbursements after sale of secured collateral failed to fully satisfy the outstanding balance on an $8,750 promissory note. This case involves the issue of whether or not the collateral was sold in a reasonably commercial manner. We affirm.

Vernon Thompson and Donald Thompson signed a promissory note in favor of Farmers State Bank [hereinafter Bank] with interest at 17.5 percent per annum. In order to secure the promissory note the Thompsons signed a U.C.C. security agreement wherein they granted the Bank a security interest in their 1979 42-foot Star trailer.

The Thompsons failed to pay principal and interest due on the note. The Bank subsequently declared a default on the note and initiated this action. The Bank's complaint requested judgment against the Thompsons for the amount due, for court approval to sell the trailer, and for a deficiency judgment against the Thompsons if the proceeds from the sale of the trailer were insufficient to satisfy the obligation.

The Thompsons answered admitting their default but denied that the Bank was entitled to a deficiency judgment. The Thompsons also gave a "Release of Personal Property" form to the Bank. The release form indicated that the Thompsons were relinquishing the secured property and directed the Bank to immediately secure possession of the trailer so that the Bank could protect its security interest. The Bank repossessed the trailer.

The Bank sent the Thompsons a "Notice To Buyer of Redemption" form giving them notice under Chapter 41–09, N.D.C.C., of the repossession and allowing them fifteen days from the date of repossession to make redemption by tendering $8,895 to the Bank. The Thompsons failed to redeem the trailer.

At a trial to the court, the Bank's only witness, Duane Streyle, vice president of the Bank, testified that he was responsible for selling the trailer. Streyle testified that he advertised the trailer for sale in six publications on ten separate occasions between January 18, 1984, and July 6, 1984. Streyle admitted that he did not obtain an independent appraisal of what the trailer was worth. Streyle testified that he initially advertised the trailer at $9,000. After receiving no offers, Streyle lowered the asking price to $8,000 but still was unable to find a purchaser. Streyle stated that he did receive "blind bids" of $6,400 and $5,000, but that the prospective purchasers withdrew their bids after viewing the trailer's somewhat rundown condition. Streyle further testified that the trailer was in need of repairs: the brakes and tires were in poor condition; the paint was chipped and the metal rusted; and there was no tarpaulin. The Bank was finally able to sell the trailer on July 12, 1984, at a private sale for $4,000.

At trial Vernon Thompson testified that the trailer did need repairs but it was his opinion the trailer was worth $8,750 before repairs. Vernon Thompson also testified that he had been unsuccessful in his attempt to sell the trailer during the period of December 1982 until December 1983 when the Bank commenced legal action against him. Thompson admitted that the trailer market was depressed in early 1984. No expert testimony regarding the value of the trailer at the time of resale was submitted by either party.

The Thompsons' indebtedness to the Bank on July 12, 1984, the date of resale, was $10,034.01, calculated as follows:

| | |
|---|---|
| Principal: | $ 8,033.35 |
| Interest to 12/02/83: | 739.20 |
| Interest to 7/12/84: | 858.55 |
| Cost of Resale: | 402.91 |
| Total Debt: | $10,034.01 |

The Bank requested a deficiency judgment against the Thompsons because the trailer was sold for only $4,000. The trial court determined that the Bank had disposed of the trailer in a commercially reasonable manner and awarded the Bank a deficiency judgment for $3,649—the difference between the debt and the fair market value of the trailer—plus interest, costs, and disbursements.

Subsequent to trial, the Thompsons, in appealing the deficiency judgment in favor of the Bank, timely filed a notice of appeal and deposited a $250 cashier's check with the clerk of the county court. The Thompsons also moved the trial court for an order staying execution of the judgment pending appeal, which motion the trial court granted upon proof that the Thompsons had submitted the cashier's check for $250. The Bank thereafter moved the court to have the stay lifted because the Thompsons had failed to provide it with the proper notice of their motion for a stay. The court denied the Bank's motion. The Bank cross-appealed from the deficiency judgment and the order denying the Bank's motion to lift the stay.

Before we examine the issues raised by the Thompsons' appeal, we will consider the Bank's allegations that the appeal should be dismissed because (1) it did not receive notice of the motion for stay prior to the order of the county court staying execution of the judgment, and (2) the bond posted by the Thompsons did not contain adequate conditions as required by Rule 7, N.D.R.App.P.

▌ We find the first contention of the Bank to be without merit. Although the Bank should have received notice of the motion for stay [see Rule 8, N.D.R.App.P.], it has cited to us no authority for its contention that lack of such notice is cause to dismiss the appeal [see Rule 3(a), N.D.R. App.P.]. With regard to the second contention, the bond required by Rule 7, N.D.R. App.P., was posted by the Thompsons. The Bank points out that neither the $250 check the Thompsons deposited with the clerk of the county court nor the notice of

appeal or any other document accompanying that notice contains the conditional language of Rule 7, N.D.R.App.P. Rule 7 requires that "[a] bond for costs on appeal ... *shall be conditioned* to secure the payment of costs if the appeal is finally dismissed or the judgment affirmed, or of such costs as the supreme court may direct if the judgment is modified." [Emphasis added.] Although the bond in this case may not have been conditioned in an entirely appropriate form as required by Rule 7, such inadequacy is not automatic ground for dismissal. Rule 3(a), N.D.R.App.P., provides in part that "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court deems appropriate, which may include dismissal of the appeal."

We have said that "[t]he determination whether to dismiss an appeal for failure to comply with the Rules of Appellate Procedure rests wholly within the discretion of this court." *Kastrow v. Kastrow,* 310 N.W.2d 573, 574 (N.D.1981), citing *State v. Packineau,* 270 N.W.2d 336 (N.D.1978). See also *J.L.R. v. R.L.G.,* 311 N.W.2d 191 (N.D.1981); *Gerhardt v. Fleck,* 251 N.W.2d 764 (N.D.1977) [summary of cases in which motions to dismiss were made for failure to comply with the appellate rules].

In *Matter of Estates of Kjorvestad,* 304 N.W.2d 83, 85 (N.D.1981), we stated:

"... the answers to the following questions should be given appreciable consideration in determining whether or not this Court, in its discretion, should dismiss an appeal:

"(1) Has the party making the motion to dismiss been prejudiced by appellant's failure to comply with the rules?

"(2) Has the appellant demonstrated justifiable cause for its failure to comply with the rules?

"(3) Has the appellant cured the defect prior to oral argument and has the record and all the briefs been filed with the court so that the merits can be evaluated?

"(4) Is the underlying appeal meritorious?

[Citations omitted.]

"Although we have many times expressed a view to hear the merits of an appeal, that consideration will not always be the overriding factor. *State v. Packineau, supra.*"

In this case, while the Thompsons have not explained the reasons for their failure to adequately condition the cashier's check, the Bank has not alleged that it was prejudiced by such failure. Finally, although the cashier's check posted as a bond was not conditioned as required by Rule 7, N.D.R.App.P., after the Bank moved the trial court to lift the stay the trial court ordered that the cashier's check was given as a cost bond pursuant to the rule. That order automatically conditioned the check as required by the rule absent further action by the Thompsons. We have determined that the appeal in this case is meritorious and we conclude that the appeal should not be dismissed.[1]

 The Thompsons contend on appeal that the Bank was not entitled to a deficiency judgment because the Bank failed to comply with the statutory requirements set forth in Section 41–09–50(3), N.D.C.C.[2] The Thompsons specifically argue (1) that the Bank (a) failed to give them reasonable notification of the time after which any private sale or other intended disposition of the trailer would be made, and (b) failed to sell the trailer in a commercially reasonable manner;[3] and (2) that the Bank failed to

1. The Thompsons filed no brief in response to the issues raised by the Bank on its cross-appeal and waived oral argument. The Bank on its cross-appeal raised not only issues involving dismissal of the appeal but also raised an issue in which it alleges that it was entitled to the total amount of principal and interest due, i.e., a judgment in the amount of $6,034.01.

This court, as have others, has condemned the failure to file an appellee's brief. In *State v. Abrahamson,* 328 N.W.2d 213, 215, n. 1 (N.D. 1982), we stated that a brief should be filed even in those instances in which the attorney believes the appeal to be totally without merit. We observed that an appellate court does not serve as both judge and an advocate for the appellee and that failure to file an appellee's brief places an undue burden on this court. We repeat that admonition here.

2. Section 41–09–50, N.D.C.C., sets forth a secured party's right to dispose of collateral after a debtor has defaulted and provides, in part:

"41–09–50 [U.C.C.] (9–504) *Secured party's right to dispose of collateral after default—Effect of disposition.*

"3. Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but *every aspect of the disposition, including the method, manner, time, place, and terms must be commercially reasonable.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor,* if he has not signed after default a statement renouncing or modifying his right to notification of sale. . . ." [Emphasis added.]

3. The Bank contends that the Thompsons either waived their right to notice or are estopped to claim damage from a possibly defective notice because they voluntarily relinquished any right in the trailer and asked the Bank to take possession of it.

Section 41–09–47(3)(b), N.D.C.C., provides that the notice of disposition required by Section 41–09–50(3) may not be waived except as Section 41–09–50(3) permits a debtor to waive after default his right to notification of sale by signing a statement renouncing or modifying such right.

The Bank asserts that a debtor may waive his right to notice or be estopped to claim damage by conduct other than execution of a written waiver of notice. The Bank directs our attention to *Nelson v. Monarch Invest. Plan of Henderson, Inc.,* 452 S.W.2d 375 (Ky.1970), and *Commercial Credit Corporation v. Wollgast,* 11 Wash.App. 117, 521 P.2d 1191 (1974), wherein both courts found that acts by the debtor other than written waiver constituted either waiver of notice of disposition or estopped the debtor from claiming damage by reason of the creditor's failure to give notice. See also *City Bank & Trust Co. v. Van Andel,* 220 Neb. 152, 368 N.W.2d 789 (1985).

After reviewing the record, we note that the waiver or estoppel theory was not directly raised at the trial level and was not a basis for the trial court's decision. Issues not presented to the trial court cannot be considered for the first time on appeal. See *Federal Land Bank of Saint Paul v. Wallace,* 366 N.W.2d 444 (N.D. 1985); *Hirschkorn v. Severson,* 319 N.W.2d 475 (N.D.1982).

overcome the presumptive burden set forth in *State Bank, Etc. v. All-American Sub, Inc.*, 289 N.W.2d 772 (N.D.1980), that the trailer had a market value at least equal to the amount of the indebtedness.

In *All-American Sub, Inc., supra,* we considered the effect of a secured creditor's failure to give a debtor (guarantor) notice prior to disposition of collateral. In summarizing two conflicting authorities, we observed (289 N.W.2d at 779–780):

"... One line, as expressed in *Bank of Gering v. Glover,* 192 Neb. 575, 223 N.W.2d 56 (1974), holds that failure to give notice of intended disposition precludes the recovery of a deficiency judgment. Under this view the giving of notice is seen as an absolute condition precedent to the recovery of any deficiency. [Citations omitted.]

"The other line, as expressed in *Levers v. Rio King Land & Inv. Co.,* 93 Nev. 95, 560 P.2d 917 (1977), holds that a creditor's misconduct is not an absolute bar to deficiency. Instead, it will be presumed the collateral had a fair market value equal to the amount of the debt and no deficiency will be allowed unless the creditor overcomes this presumption by producing evidence that the fair market value of the collateral was less than the outstanding debt. [Citations omitted.]"

We determined that the second line of cases expressed the better view and furthered the spirit of commercial reasonableness. Therefore, in North Dakota, when a secured party fails to give notice prior to disposition, the burden shifts to the secured party to prove that the sale resulted in the fair and reasonable value of the property being credited to the debtor's account.

In *State Bank of Towner v. Hansen,* 302 N.W.2d 760, 767 (N.D.1981), we held:

"... If the collateral is disposed of without prior notice to the debtor, the creditor cannot obtain a deficiency judg-

ment unless it meets its burden of overcoming the presumption that the collateral had a fair market value at least equal to the amount of the indebtedness. Upon overcoming such presumption the secured creditor will only be allowed to recover a deficiency for the lesser of: (a) the difference between the indebtedness and the fair market value of the collateral sold, or (b) the difference between the indebtedness and the actual amount received upon sale of the collateral. In this regard, the secured creditor cannot overcome the presumption by merely introducing evidence of the value received from the disposition of the collateral. [Citations omitted.]

· · · · ·

"... Accordingly, in order to meet its burden in this regard, ... [a secured party] must introduce credible evidence of the fair market value of the collateral other than the price received for it and other than the opinions of its own agents or employees."

The trial court found that the sale of the trailer was not commercially unreasonable. "This is essentially a factual question." *All-American Sub, Inc., supra,* 289 N.W.2d at 780, citing *United States v. Conrad Pub. Co.,* 589 F.2d 949 (8th Cir. 1978). We have said that a finding of fact will not be set aside unless we determine that it is "clearly erroneous." See Rule 52(a), N.D.R.Civ.P.

In its memorandum opinion, which was incorporated by reference in the findings of fact, conclusions of law, and order for judgment, the trial court made the following findings concerning the Bank's disposition of the trailer:

"... I find the Bank's January 6, 1984 notice did constitute prior notice to debtor before disposition, but was not sufficiently well-worded to clearly meet the requirements of NDCC 41–09–50(3). Therefore, I believe this case does re-

---

This issue raised by the Bank may involve issues of fact not tried by the trial court. This is one of the primary reasons that issues not presented to the trial court will not be con-

sidered for the first time on appeal. Furthermore, we need not consider issues not necessary to our decision. *Bakke v. St. Thomas Public Sch. Dist. No. 43,* 359 N.W.2d 117 (N.D.1984).

quire the Court to utilize the 'shift' theory to see if Bank is entitled to obtain a deficiency judgment. The record shows that in *addition* to evidence that the resale price was $4,000.00 there is credible evidence: 1) that between the Thompsons' and Bank's efforts it took nearly 19 months to obtain a buyer of the trailer, 2) that the Bank attempted to sell the trailer at $9,000.00, $8,500.00, $8,000.00 and had offers of $6,400.00 and $5,000.00, 3) that the Bank received no firm offers at any of those price levels, 4) that the trailer market 'was depressed' during the time the Bank was trying to sell the trailer, 5) that Thompsons had tried to sell the trailer for approximately one year prior to turning the trailer over to Bank, 6) that the trailer needed approximately $2,000.00 worth of paint, repairs and tires, 7) that Thompsons' opinion was the trailer was worth $8,750.00, 8) that the total indebtedness on July 12, 1984 (the date of disposition) was $10,034.01.

"It is my opinion that this evidence clearly shows that the fair market value of the trailer on July 12, 1984, in its condition of disrepair, was not at least $10,034.01. Bank has overcome said presumption, and is entitled to receive a deficiency judgment. This evidence shows to the Court the fair market value is approximately $6,385.00. This value is based on the average of the resale price ($4,000.00); the highest offer received by bank ($6,400.00); and Thompsons' own opinion ($8,750.00). The differences in the values, I believe, exists because of the repairs needed to be done to the trailer and the fair market value would be affected by the extent and nature of improvements made.

"Based on a fair market value of $6,385.00 the deficiency is calculated as the lesser of:

"1. Debt $10,034.01
 Fair Market Value $ 6,385.00
 $ 3,649.01

"or

"2. Debt $10,034.01
 Resale $ 4,000.00
 $ 6,034.01

"Therefore, I conclude the Bank is entitled to a deficiency judgment against Thompsons in the amount of $3,649.01."

We conclude that the trial court's findings that the Bank did not provide sufficient notice prior to disposition and that the Bank had overcome the presumption that arose because of failure to give sufficient notice are not clearly erroneous. Therefore, the Bank is entitled to its deficiency judgment.

The Bank urges us to adopt what it refers to as "further authority under the second line" which we adopted in *All-American Sub, supra,* and hold that before the burden to prove the collateral sold for fair market value would shift to the secured creditor, the debtor must first show the prejudice caused by the lack of notice. The position advanced by the Bank appears to us to be inconsistent with the presumption that the collateral had a fair market value equal to the amount of the debt. In light of the presumption we adopted in *All-American Sub,* a sale for less than the amount of the debt is obviously prejudicial.[4] It would be a substantial burden on the debtor to require that he must allege and prove a violation *and* come forward with evidence demonstrating the loss sustained by that violation before the presumption obligating the secured party to prove that the fair market value of the collateral was received at the disposition would arise. The debtor should be required to show only noncompliance, not loss caused by the noncompliance, before the burden shifts to the secured party. See Page, *A Secured Party's Right To A Deficiency Judgment After Noncompli-*

---

**4.** The position advanced by the Bank appears somewhat akin to a third, and distinctly minority, view that the debtor has a cause of action for the loss caused by the creditor's failure to give notice and that the cause of action merely serves as an offset to the creditor's claim for a deficiency judgment. See 1A Bender's *Uniform Commercial Code Service,* Sec. 8.06(2) at 122 (1985). We decline to adopt that view.

*ance With The Resale Provisions Of Article 9,* 60 N.D.L.Rev. 531 (1984), for a discussion of this and other similar issues. Recognizing, as we have, that there is a line of authority which goes so far as to hold that failure to give notice of intended position precludes the recovery of a deficiency judgment in all instances, we believe the rule we adopted in *All-American Sub* adequately protects the interests of the creditor and the debtors and we need place no greater burden on the debtors to protect the creditor.

Finally, the Bank asserts that while the trial court was correct in concluding that the Bank was entitled to a deficiency judgment, the court erred in determining the amount of the judgment. The Bank contends that the trial court erred by considering Vernon Thompson's testimony on the value of the trailer, $8,750, and the blind bid of $6,400 in arriving at the market value of the trailer, $6,385. The Bank asserts that because this court in *State Bank of Towner v. Hansen, supra,* held that the opinions of the secured party, its agents or employees, cannot be used to determine the fair market value of the security, the converse should be true, that the opinions of a debtor and his agents or employees as to the value of the security should not be used by the court.

We resist the Bank's invitation to enlarge the scope of the *Hansen* holding, noting that it is a general rule in this State that the owner of property, both real and personal, is fully competent to testify as to the property's value. See *Pfliger v. Peavey Co.,* 310 N.W.2d 742 (N.D.1981); *Smith v. Riedinger,* 95 N.W.2d 65 (N.D.1959); *Imus v. Huber,* 71 N.W.2d 339 (N.D.1955); *McCaffery v. Northern Pac. Ry. Co.,* 22 N.D. 544, 134 N.W. 749 (1912). After reviewing the trial court's determination concerning the fair market value of the trailer, we are not left with a definite and firm conviction that the trial court made a mistake. See Rule 52(a), N.D.R.Civ.P.

The judgment of the county court is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.