DEUTSCHE CREDIT CORPORATION, A DELAWARE CORPORATION, APPELLANT, V. HI-BO FARMS, INC., A NEBRASKA CORPORATION, ET AL., APPELLEES.

398 N.W.2d 693

Filed January 2, 1987.  No. 85-512.

W. Eric Wood of Dwyer, Pohren, Wood & Heavey, for appellant.

Kent L. Frobish of Erickson & Sederstrom, P.C., for appellees.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Plaintiff-appellant, Deutsche Credit Corporation, a Delaware corporation, brought a suit for a deficiency judgment against defendants-appellees, Hi-Bo Farms, Inc., a Nebraska corporation, Allen Bors, Janice Bors, Dale E. Hinz, and Carol Hinz. The noncorporate defendants, who guarantied Hi-Bo Farms' debt, each moved for a summary judgment against plaintiff. The trial court sustained the motion, thereby dismissing plaintiff's suit as to each of the guarantors. Plaintiff's four assignments of error converge to present a single issue: whether the trial court correctly determined that plaintiff failed to give each of the guarantors notice, as a consequence of which plaintiff is barred from recovering a deficiency judgment from any one of them. We affirm.

On June 28, 1981, Hi-Bo Farms purchased farm machinery on a retail installment contract from Friend Implement Company for a total deferred purchase price of $130,599.82, which contract included a security interest in favor of Friend Implement. Friend Implement then assigned the security interest to Fiat Credit Corporation. Fiat later filed a restated certificate of incorporation in the State of Delaware to change its name to D.B. Credit Corporation. A second Delaware restated certificate of incorporation changed the name to the present Deutsche Credit Corporation.

Concurrent with the signing of the contract between Hi-Bo Farms and Friend Implement, each of the noncorporate defendants entered into a guaranty with Fiat. One guaranty was signed by Allen Bors, who was a vice president of Hi-Bo Farms, and Janice Bors, who was the treasurer. A second guaranty was signed by Dale Hinz, who was president of Hi-Bo Farms, and

Carol Hinz, who was the secretary. The guaranties made the individuals personally liable for the debts of Hi-Bo Farms.

Hi-Bo Farms defaulted, and plaintiff accelerated the balance due under the terms and conditions of the retail installment contract and security agreement. Hi-Bo Farms then surrendered the equipment to plaintiff. Thereafter, plaintiff mailed a separate notice of private sale to Hi-Bo Farms as well as to each of the guarantors. Each notice reads as follows:

RE: HI-BO FARMS INC.

You are hereby notified by and on behalf of the undersigned secured party that by virtue of the default under the terms and provisions of a security agreement executed by the captioned Debtor dated 06-28-81, the undersigned secured party, holder of the aforesaid agreement and the indebtedness represented therby [sic] will, on or after 08-18-84 make one or more private sales or other dispositions of our right, title and interest in and to the goods described in said agreement, which goods may be described as follows:

ONE WHITE 9700 COMBINE S/N 97-20218

W/CORNHEAD S/N A90065, AND KWICK CUT HEAD S/N 912118

The net proceeds of sale (less expenses incurred) shall be, in accordance with said agreement, applied to the reduction of total obligation due and owing by Debtor to the undersigned secured party.

Dated this 7TH day of AUGUST, 1984.

Deutsche Credit Corporation

The equipment was sold at private sale on October 3, 1984, for $28,800. This action for deficiency involves the principal balance of $35,154.24 remaining due under the installment sales contract and security agreement after application of the net proceeds of the sale.

Neb. U.C.C. § 9-504(1) (Reissue 1980) provides that after default a secured party may sell the collateral. Section 9-504(3) provides for the disposition of the collateral by public or private sale and, with certain exceptions not relevant to the present

inquiry, requires that reasonable notice of the sale be sent by the secured party to the debtor. A guarantor, being one "who owes payment or other performance of the obligation secured," has been held to be a "debtor" as defined in Neb. U.C.C. § 9-105(1)(d) (Reissue 1980), and thus entitled to notice. *Allis-Chalmers Corp. v. Haumont*, 220 Neb. 509, 371 N.W.2d 97 (1985).

The guarantors contend the trial court correctly determined they were not given notice. In so arguing they place heavy reliance upon this court's recent opinion in *First Nat. Bank & Trust Co. v. Hughes*, 214 Neb. 42, 332 N.W.2d 674 (1983).

In *Hughes*, Vernor L. Hughes and his wife, Diana L. Hughes, were corporate officers of Central Auto & Truck Supply, Inc. The bank's loan to Central Auto was evidenced by a promissory note and by a security agreement tying the loan to the security of the assets of Central Auto. The loan, promissory note, and security agreement were executed by Central Auto through Mr. Hughes, its president. On the same date the loan was made, Mr. and Mrs. Hughes both executed and delivered a personal guaranty for the corporate debt. Default subsequently occurred, and Central Auto filed a bankruptcy proceeding. The trustee in bankruptcy abandoned the secured assets of Central Auto, and the bank obtained possession of them. The bank then sent a letter to the Hughes residence, reading as follows:

Mr. Venor [sic] Hughes, President
Central Auto & Truck Supply
1558 East 5th
Fremont, NE. 68025

RE: Loan #869930
Collateral: Financing Statement 5-9-74

Dear Mr. Hughes:

This is to notify you that, in connection with the repossession of the above collateral involved in the abovee [sic] account, you may redeem said collateral and terminate the contract relating thereto by payment of $51,417.90 plus interest and expenses any time prior to the sale of said collateral on the date designated below. It is possible for this sum to increase should further expenses

of any nature be incurred by our bank.

In the event you are not able to fully redeem the collateral or make suitable arrangements for redemption, the collateral will be sold at private sale on or after April 10, 1981 at the present place of storage which is 245 East 5th St., and First National Bank & Trust Company of Fremont.

Local, State and Federal laws permitting, you will be held liable for any deficiency declared owing after disposal of this collateral.

*Hughes* at 44-45, 332 N.W.2d at 676.

In resolving the case we said:

The [above] notice in this case makes no reference to the guaranty; indeed, it makes reference only to the "Financing Statement 5-9-74," in fact a security agreement dated May 24, 1974, a document which was signed individually by neither Mr. Hughes nor Mrs. Hughes. In that regard the notice fails to apprise either Mr. or Mrs. Hughes that a personal deficiency judgment might be sought against any one of them in his or her capacity as guarantor of the corporation's debt. Secondly, as between Mr. Hughes and Central Auto, the matter as to whom the notice was sent is ambiguous. The interest of Mr. Hughes in this context conflicts with that of the corporation. It cannot be said that the notice, as addressed, unmistakably advises Mr. Hughes personally that he is the "you" who may be held "liable for any deficiency declared owing after disposal of this collateral." To assume that Mr. Hughes would know that a deficiency could not be obtained against the bankrupt Central Auto is to assume something not supported by the record before us. Although the statement that ambiguous language is to be construed against the drafter of the language is generally applied in the case of insurance policies, *Niemeyer v. Estate of Tichota*, 191 Neb. 484, 215 N.W.2d 885 (1974), the reasoning behind that rule is equally applicable to notices of the nature involved here.

*Hughes* at 46-47, 332 N.W.2d at 677. We thus determined that the Hugheses had not received notice and that the trial court

was therefore correct in dismissing the bank's petition at the close of the bank's evidence.

The guarantors contend that the notices in the present case are indistinguishable from the notice in *Hughes*. Plaintiff argues that, on the contrary, its notices are different from the notice in *Hughes* in several important respects. First of all, while in *Hughes* there was but a single notice, in the present case each of the guarantors was sent a separate notice. While the notice in *Hughes* was addressed to the president of the corporate debtor, each of the notices to the guarantors in this case was addressed to a guarantor individually, and no reference was made to the guarantor's capacity as an officer of the corporate debtor. While the notice in *Hughes* directed specific attention to "Collateral: Financing Statement 5-9-74," which the guarantor had not signed, the notices in this case directed attention to the entire "HI-BO FARMS INC." transaction. Plaintiff concludes that these distinctions are such that the guarantors had no reasonable basis to conclude that the notices were sent to them in their capacity as corporate officers rather than to them in their own individual capacities.

The guarantors, on the other hand, point to the facts that, as did the notice in *Hughes*, the notices in this case refer only to Hi-Bo Farms as the debtor. Moreover, as the notice in *Hughes* failed to make any reference to the guaranties executed by the Hugheses, so in this case did the notices limit themselves to the "default under the terms and provisions of a security agreement executed by the captioned Debtor . . . ." Thus, the guarantors argue that the notices are, at best, ambiguous and, as such, constitute no notice at all insofar as they individually are concerned.

We conclude that the notices are ambiguous as a matter of law with respect to the guarantors. They refer to but a single debtor, Hi-Bo Farms, and refer only to the security agreement executed by that debtor solely. That ambiguity is to be resolved against plaintiff as the drafter of the notices. *First Nat. Bank & Trust Co. v. Hughes*, 214 Neb. 42, 332 N.W.2d 674 (1983).

That being so, the only question remaining is whether a summary judgment in favor of the guarantors and against plaintiff should have been entered.

Summary judgment is to be granted to the moving party where there is no genuine issue as to any material fact or as to the ultimate inferences to be drawn therefrom and the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, the evidence is to be viewed most favorably to the party against whom the motion is directed, giving to that party the benefit of all the favorable inferences which may reasonably be drawn from the evidence. The party moving for summary judgment has the burden of showing that no genuine issue as to any material fact exists; that party must therefore produce enough evidence to demonstrate his entitlement to a judgment if the evidence remains uncontroverted, after which the burden of producing contrary evidence shifts to the party opposing the motion. *Carlson v. Waddle*, 223 Neb. 671, 392 N.W.2d 777 (1986); *Draemel v. Rufenacht, Bromagen & Hertz, Inc.*, 223 Neb. 645, 392 N.W.2d 759 (1986); *Cornhusker Agrl. Assn. v. Equitable Gen. Ins. Co.*, 223 Neb. 618, 392 N.W.2d 366 (1986); Neb. Rev. Stat. § 25-1332 (Reissue 1985).

Since the notices are ambiguous as a matter of law and since as a matter of law the ambiguity must be resolved against plaintiff and in favor of the guarantors, the situation is, as the guarantors argue, as if no notice whatsoever had been sent to them. Under that circumstance there exists no genuine issue as to any material fact or as to the inferences to be drawn therefrom, and the guarantors are entitled to judgment as a matter of law. Consequently, the trial court was correct in sustaining the guarantors' motion for summary judgment, resulting in a dismissal of plaintiff's action as to the guarantors.

AFFIRMED.

KRIVOSHA, C.J., not participating.

BOSLAUGH, J., dissenting.

Except in certain circumstances, Neb. U.C.C. § 9-504(3) (Reissue 1980) requires that a secured party give "reasonable notification" of the time after which any private sale is to be made. In comment 5 of the 1972 comments to § 9-504, it is stated: " 'Reasonable notification' is not defined in this Article; at a minimum it must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate

steps to protect their interests by taking part in the sale or other disposition if they so desire."

Consistent with this commentary, we have recognized that the purpose underlying the § 9-504(3) notice requirements is to ensure that a debtor entitled to notice at least has an opportunity to protect his interests, whether by redemption, finding prospective purchasers for the collateral, or otherwise. *City Bank & Trust Co. v. Van Andel*, 220 Neb. 152, 368 N.W.2d 789 (1985); *Havelock Bank v. McArthur*, 220 Neb. 364, 370 N.W.2d 116 (1985). In other words, the purpose of the statutory notice is to inform the debtor that the collateral is about to be sold to satisfy all or a part of the debt.

Clearly, a guarantor is entitled to notice as a debtor under § 9-504(3). *Allis-Chalmers Corp. v. Haumont*, 220 Neb. 509, 371 N.W.2d 97 (1985). But saying that a guarantor is entitled to notice as a debtor provides no justification for requiring that the guarantor be notified with more specific information than the primary obligor.

In previous cases not involving notice to guarantors, we have indicated that the only notice required by § 9-504(3) as to a private sale is written notice of the time after which the collateral will be sold. *Citizens State Bank v. Sparks*, 202 Neb. 661, 276 N.W.2d 661 (1979); *Contois Motor Co. v. Saltz*, 198 Neb. 455, 253 N.W.2d 290 (1977).

The U.C.C. is recognized by several courts to embody a general scheme which makes distinctions along functional, rather than formal, lines. See, *MBank Dallas, N.A. v. Sunbelt Mfg., Inc.*, 710 S.W.2d 633 (Tex. App. 1986); *Chase Manhattan Bank, N.A. v. Natarelli*, 93 Misc. 2d 78, 401 N.Y.S.2d 404 (1977). If the notices in this case served their purpose, they should have been held to satisfy the requirements of § 9-504(3). There seems to be no question but that the notices here met the express statutory requirements and gave the guarantors sufficient time to protect their interests. Thus, it would seem that the notices were sufficient.

In *Reeves v. Habersham Bank*, 254 Ga. 615, 331 S.E.2d 589 (1985), the court rejected the argument of three guarantors who claimed that they had not received reasonable notice as required by the Georgia equivalent to § 9-504(3). The guarantors based

their argument on the fact that the notice had been sent to them because of their status as secondary lienholders on the collateral, and not because of their status as debtors. In rejecting this argument the court reasoned that the notice was adequate because it afforded the guarantors an opportunity to take steps to protect their interests. Similar logic should apply in the present case.

The general purpose of the U.C.C., including article 9, "is to simplify, clarify and modernize the law governing commercial transactions . . . ." *Natarelli, supra* at 87, 401 N.Y.S.2d at 410. Our decisions run contrary to that purpose by creating numerous traps and pitfalls for the unwary creditor. The majority opinion seems to indicate that the notice must include legal advice to the debtor as to why he may be liable for a deficiency. What ought to be a simple procedure has become a highly technical matter in which skilled legal advice is necessary to avoid disaster.

The present case is distinguishable on its facts from *First Nat. Bank & Trust Co. v. Hughes*, 214 Neb. 42, 332 N.W.2d 674 (1983). In the *Hughes* case the single letter of notice sent was addressed to one of the guarantors in his corporate capacity in the debtor corporation. An ambiguity arose from the fact that the addressee's interest as a coguarantor was in direct conflict with that of the debtor corporation as primary obligor. In the present case the individual guarantors each received a letter of notification which made no reference to their corporate capacities. Thus, the ambiguity in the *Hughes* case was not a factor here.

The fact that the notices in this case failed to refer to the guaranty agreements should not affect the result. A person who voluntarily signs a guaranty for the debt of another should be expected to know that if any part of the debt is not paid he will be liable for all or part of the deficiency. I would not have affirmed the judgment.