NANDAGASEN G. NAIDOO, ALSO KNOWN AS CASEY NAIDOO, APPELLANT, V. UNION PACIFIC RAILROAD COMPANY, A CORPORATION, APPELLEE.

402 N.W.2d 653

Filed March 13, 1987.   No. 85-515.

Joseph P. Inserra and John P. Inserra of Inserra Law Offices, for appellant.

Gayla L. Fletcher, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

The plaintiff, Nandagasen G. Naidoo, also known as Casey Naidoo, commenced this action under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 et seq. (1982), to recover general damages for emotional distress and special damages for medical expenses and lost wages alleged to have been caused by the negligence of the defendant, Union Pacific Railroad Company.

The plaintiff alleged his damages were the result of verbal and physical abuse inflicted by a Mr. Bachman, an employee of the defendant, at a June 24, 1981, meeting. The plaintiff claims he was acting in the course and scope of his own employment with the defendant at the time of the meeting.

The defendant's negligence was predicated on two grounds in the petition: In failing to comply with the statutory and nondelegable duties to (1) provide plaintiff with a safe place to work in that it knew or should have known the defendant's employee would or had a propensity to commit the acts alleged; and to (2) provide safe customs and practices to do the work in that defendant failed through its customs and practices to screen the type of individual, namely defendant's employee, who committed the acts alleged.

The defendant's answer generally denied the allegations of the petition and alleged that the FELA was not applicable to the plaintiff's claims.

The defendant filed a motion for summary judgment which was heard on the pleadings, affidavits, and the deposition of the plaintiff. The trial court sustained the motion and dismissed the action. The plaintiff has appealed.

The record shows that in May of 1981, the plaintiff was a specialist in the defendant's billing and contracts department. His direct supervisor, Pam Mellegaard, and her supervisor, Bob Eperson, attempted to fire the plaintiff because of a "personality conflict" between the plaintiff and Mellegaard. The plaintiff, through his union, the Brotherhood of Railway and Airline Clerks (BRAC), attempted to exercise his seniority to find a new job. As a member of BRAC, the plaintiff was subject to the terms and conditions of employment imposed by the collective bargaining agreement between BRAC and the defendant.

A union official, George MacIntosh, informed the plaintiff that he could not be fired. MacIntosh then arranged a meeting between the plaintiff; himself; and two management representatives, John Casteel, an assistant to John Deasey, the controller of the railroad, and Chuck Saylor, an assistant to Casteel. At this meeting the plaintiff was told that he was not fired and was asked to provide a list of deficiencies in the

department and also a writeup on Mellegaard's outside business affiliations. The list of deficiencies was to be given to Deasey. The plaintiff did submit a list of deficiencies to Saylor and a writeup on Mellegaard to MacIntosh.

On June 24, 1981, Bachman, the local chairman of the union and also an employee of the defendant, summoned the plaintiff from his office at work to a meeting with Saylor, MacIntosh, and himself. According to the plaintiff, the following transpired at the meeting:

> A. I went in the office, and there was Mr. Saylor sitting across from me, and Mr. MacIntosh was sitting on the other side of the table. And Mr. Bachman threw this list at me and said, "What is this?" And he used a couple of foul languages.
>
> Q. What did he say?
>
> A. He said, "You think I'm a fucking idiot?" And he threw this — and I said, "What do you mean?" He said — he made a statement, he said, "This is not enough. This is not enough, the list." And he picked on my background and my religion and he threatened — he first — he caught me by my collar up here and pushed me against the wall and said he'd burn my house down, and he told me that he was doing [sic] to kick me out of the country. And I said, "Well, I'm a citizen," and he said, "Well, not anymore." He said, "Then you're fired. Get out of here." And Mr. Casteel's staff was all outside, they all heard it, so —

According to the plaintiff, Bachman was intoxicated at the time of the incident.

Saylor later apologized to the plaintiff for Bachman's actions and assured the plaintiff that Bachman could not fire him. Bachman was employed in a different department, and there is no evidence that the plaintiff ever worked for or with Bachman.

As a result of the confrontation with Bachman, the plaintiff claims he began to drink, take drugs, gamble, and have marital problems, which eventually led to his divorce. The plaintiff also claims that he suffered nightmares, fear, anger, paranoia, and sleeping problems, lost his management aspirations, and even began to plot to kill the people at work whom he believed had caused his problems. The plaintiff claims that he was truly

fearful of Bachman's threats because he believed Bachman to be a dangerous man.

The plaintiff claims that the order granting the motion for summary judgment was in error because the trial court impliedly and erroneously determined that (1) Naidoo's claim was a minor dispute under the Railway Labor Act (RLA), 45 U.S.C. §§ 151 et seq. (1982), and, therefore, was within the exclusive jurisdiction of the National Railroad Adjustment Board, (2) Bachman was not, in fact, acting within the scope of his employment with Union Pacific at the time he allegedly assaulted Naidoo, and (3) as a matter of law, a purely mental injury is not cognizable under the FELA.

We note at the outset that on a motion for summary judgment, the moving party is entitled to judgment as a matter of law where there exists no genuine issue as to any material fact or as to the ultimate inferences to be drawn therefrom. *Deutsche Credit Corp. v. Hi-Bo Farms, Inc., ante* p. 463, 398 N.W.2d 693 (1987). In considering such a motion, the evidence is to be viewed most favorably to the party against whom the motion is directed, giving that party the benefit of all favorable inferences which may reasonably be drawn from the evidence. *Deutsche Credit Corp., supra.* The moving party bears the burden of showing that no genuine issue of material fact exists and must produce enough evidence to demonstrate his entitlement to judgment if the evidence remains uncontroverted. *Deutsche Credit Corp., supra.* If he is successful in doing so, the burden of producing contrary evidence shifts to the nonmoving party. *Deutsche Credit Corp., supra.*

The plaintiff contends there was a genuine issue of material fact as to whether Bachman was acting within the scope of his employment with the defendant at the June 24, 1981, meeting.

The FELA makes the carrier liable for "the negligence of any of the officers, agents, or employees of such carrier . . . ." 45 U.S.C. § 51. Although the express language of the statute limits the carrier's liability to that for the negligence of its employees, etc., the FELA has been interpreted to reach at least some intentional torts. *Lancaster v. Norfolk and Western Ry. Co.*, 773 F.2d 807 (7th Cir. 1985).

Two theories of liability are recognized in FELA cases involving intentional assaults by fellow employees. *Brooks v. Washington Terminal Co.*, 593 F.2d 1285 (D.C. Cir. 1979). The first, the respondeat superior theory, provides that an assault committed by an employee in the course of his duties and in furtherance of the employer's business can serve as a basis for FELA liability. *Jamison v. Encarnacion*, 281 U.S. 635, 50 S. Ct. 440, 74 L. Ed. 1082 (1930); *Lancaster v. Norfolk and Western Ry. Co., supra; Brooks v. Washington Terminal Co., supra; Sowards v. Chesapeake & O. Ry. Co.*, 580 F.2d 713 (4th Cir. 1978); *Green v. River Terminal Ry. Co.*, 585 F. Supp. 1019 (N.D. Ohio 1984), *aff'd* 763 F.2d 805 (6th Cir. 1985). The second, the direct negligence theory, holds the railroad employer liable for failing to prevent reasonably foreseeable danger to an employee from intentional or criminal misconduct. *Harrison v. Missouri Pacific R. Co.*, 372 U.S. 248, 83 S. Ct. 690, 9 L. Ed. 2d 711 (1963); *Lancaster v. Norfolk and Western Ry. Co., supra; Brooks v. Washington Terminal Co., supra; Sowards v. Chesapeake & O. Ry. Co., supra; Green v. River Terminal Ry. Co., supra*.

The traditional concept of proximate cause is abrogated in FELA cases by the fact that the plaintiff's proof is sufficient to state a claim if it shows that the carrier's negligence, however slight, played some part in causing the injury. *Green v. River Terminal Ry. Co., supra*.

In the present case, the record shows Bachman was acting solely in his capacity as a union representative at the June 24, 1981, meeting.

The RLA imposes an affirmative duty on both the carrier and the employee

> to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier . . . .

45 U.S.C. § 152.

The evidence is clear that the plaintiff initiated contact with the local BRAC office in May of 1981, after he claims his

immediate supervisors allegedly attempted to fire him. This initial contact led to the two meetings between union officials and management representatives. Those meetings reflect reasonable efforts by the parties to settle the dispute in compliance with the RLA.

In his deposition the plaintiff admitted that Bachman and his assistant, MacIntosh, were both union representatives and did not work in the same department as the plaintiff. Bachman's only purpose in attending the June 24, 1981, meeting was in his capacity as a union official.

Under the direct negligence theory of FELA liability, the plaintiff need not prove that the coemployee's misconduct was done in furtherance of the employer's business. See, *Harrison v. Missouri Pacific R. Co., supra; Lancaster v. Norfolk and Western Ry. Co., supra.*

The plaintiff argues that since there is some evidence that at least one official of the defendant was aware of Bachman's propensity for making and carrying through on threats, it is reasonable to infer that the defendant could have foreseen harm to other employees by its continued employment of Bachman or by its failure to supervise his activities. See *Harrison v. Missouri Pacific R. Co., supra.* The difficulty with this argument is that the selection of union officials is a matter controlled entirely by members of the union. The affidavit of D.D. Matter, assistant director of labor relations for the defendant, establishes that the selection of union representatives for the BRAC is made exclusively by members of the union, and the defendant is forbidden by federal law to interfere in or control the selection of union representatives by the union members. Thus, anything done by the local chairman of the union in his capacity as chairman was a union matter which was in no way subject to the control of the defendant. The record establishes that there was no genuine issue of material fact as to liability upon a direct negligence theory.

The plaintiff in this case admits that he sustained no physical injuries as a result of the incident on June 24, 1981, and claims only damages resulting from emotional distress. The clear weight of authority is that only damages for *physical* injury may be recovered under the FELA.

In *Lancaster v. Norfolk and Western Ry. Co.*, 773 F.2d 807, 813 (7th Cir. 1985), the court recognized that "the FELA does not create a cause of action for tortious harms brought about by acts that lack any physical contact or threat of physical contact—an act such as telling a man he's fired . . . ."

Previously, in *Bullard v. Central Vermont Ry.*, 565 F.2d 193 (1st Cir. 1977), the court recognized that recovery for mental distress in an FELA action is allowed only to the extent that it is directly associated with physical injuries resulting from the defendant's negligence. Several recent federal district court decisions adhere to this view. In *Moody v. Maine Cent. R. Co.*, 620 F. Supp. 1472 (D. Me. 1985), the court granted the defendant's motion for summary judgment against the plaintiff's FELA claim for emotional distress, which was alleged to be the result of harassment and psychological abuse by the employer. Relying on *Bullard, supra,* the court concluded that "there can be no recovery for emotional disturbance under the FELA without some *precipitating* physical injury*." (Emphasis in original.) *Moody, supra* at 1473.

In *Finn v. Consolidated Rail Corp.*, 622 F. Supp. 41 (D. Mass. 1985), *aff'd* 782 F.2d 13 (1st Cir. 1986), the court granted the defendant's motion for summary judgment where the employee's estate brought an FELA action. The estate claimed that the employee became depressed and ultimately committed suicide as the result of a recordkeeping error which resulted in the employee's not being hired by a third party which had taken over part of the original employer's route. Relying on *Bullard, supra,* the court sustained the motion because there was no showing of a precipitating physical injury.

In *McSorley v. Consolidated Rail Corp.*, 581 F. Supp. 642 (S.D.N.Y. 1984), the court held that allegations of false arrest and malicious prosecution did not state claims under the FELA. This holding was based in part on the court's recognition of the fact that the FELA was judicially expanded to encompass intentional conduct that caused physical injury "in order to effectuate the Act's central purpose of removing legal obstacles to the compensation of employees who are physically injured or killed at work." *McSorley, supra* at 645. See, also, *Brady v. Penn Central Transp. Co.*, 406 F. Supp. 1239

(S.D.N.Y. 1975).

Also, in the very recent case of *Pikop v. Burlington Northern R. Co.*, 390 N.W.2d 743, 753 (Minn. 1986), the court decided that a state tort action for intentional infliction of emotional distress was not preempted by the FELA because "recovery for intentional acts under the FELA is limited to intentional torts that cause *physical* injury."

The overwhelming majority of courts have recognized that the purpose of the FELA is to provide a means of compensation to railroad employees who are physically injured as a result of their employment. See, e.g., *Brady v. Penn Central Transp. Co., supra.* The trial court did not err in holding that the plaintiff had failed to state a claim under the FELA.

It is unnecessary to consider the contentions of the parties in regard to the jurisdiction of the National Railroad Adjustment Board.

The judgment of the district court is affirmed.

AFFIRMED.