781 N.W.2d 47 (2010)
279 Neb. 638
Chadly S. BALLARD, appellant,
v.
UNION PACIFIC RAILROAD COMPANY, appellee.
No. S-09-905.
Supreme Court of Nebraska.
April 2, 2010.
*49 Michael A. Nelsen, of Marks, Clare & Richards, L.L.C., Omaha, for appellant.
*50 David J. Schmitt and John M. Walker, of Lamson, Dugan & Murray, L.L.P., Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
Chadly S. Ballard brought this action under the Federal Employers' Liability Act (FELA)[1] for injuries he claims he sustained when three fellow employees harassed him. Ballard alleges Union Pacific Railroad Company (UP) negligently supervised its workers and negligently failed to provide a safe work environment. The district court granted UP's motion for summary judgment and dismissed the action. Ballard appeals. We moved the appeal to our docket in accordance with our statutory authority to regulate caseloads of the appellate courts of this state.

BACKGROUND
Ballard brought suit against UP in the U.S. District Court for the District of Nebraska (Federal District Court)[2] based on the same set of facts as the current appeal. In that case, Ballard made various allegations, including employment discrimination in violation of title VII, 42 U.S.C. § 2000e et seq. (2006); 42 U.S.C. §§ 1981 and 1983 (2006); and the First Amendment to the U.S. Constitution. Subsequently, Ballard dismissed his causes of action under the First Amendment and §§ 1981 and 1983, leaving only the cause of action under title VII to be decided. The Federal District Court granted UP's motion for summary judgment and dismissed the lawsuit. In its order, the Federal District Court summarized the pertinent facts of the case as follows:
In 2005, Ballard began working as a truck driver in Portland, Oregon. His crew then moved to Delta, Utah. Johnny Adison, Ted Tom, and Oliver Becenti also worked in this group with Ballard. Adison and Tom were laborers and Becenti an assistant foreman. None of these employees were supervisors, nor could they hire, fire or promote other employees. Ballard had not worked with these three employees prior to this time. Craig Dannelly was Ballard's immediate supervisor. It is undisputed that on March 21, 2005, Becenti and Tom took Ballard under the arms, lifted him off the ground, and Adison thrust his hips into Ballard's groin area. When the three let Ballard down, he called them "sick bastards."
Ballard then reported the incident to Dannelly. Dannelly said he would speak to his supervisor. . . . Ballard then contacted his union representative . . ., and then he called what he believed to be the Union Pacific Equal Employment Opportunity. . . hotline. [A footnote to this case states: "It turns out that Ballard actually called a phone number that was UP's Value Line which is used for reporting a violation or possible violation of the law or UP policies."[3]] Ballard indicated that he did not believe the three men were homosexual. Ballard did not return to work the following day.
UP then began an investigation. . . . UP's Director of Construction[] immediately *51 traveled to the job site to conduct the investigation. Since Ballard did not show up for work, he was contacted by speaker phone. Following various interviews, Adison, Becenti, and Tom were charged with violating UP's Rule of Conduct 1.6 and suspended that day, March 22, 2005, pending a formal investigation. Rule 1.6 provides, in part, "Any act of hostility, misconduct, or willful disregard or negligence affecting the interests of the Company or its employees is sufficient cause for dismissal and must be reported. Indifference to duty, or to the performance of duty, will not be tolerated." . . . Ballard returned to work on March 28, 2005. Dannelly asked Ballard to return to work in Salt Lake City, Utah, to separate him from the same group where the harassment had occurred.[4]
The Federal District Court granted summary judgment in favor of UP and dismissed Ballard's claims. Subsequently, Ballard brought this suit in state court alleging FELA violations. The facts giving rise to the Federal District Court case are the same as this appeal. In both cases, Ballard testified at a deposition.
Ballard claimed in his state deposition that the March 21, 2005, incident was not the first time he had problems with the three men. According to Ballard, the three men harassed him about a week or two before the assault. Ballard could not remember specifically what the men said to him, but he thought it had something to do with his being "small." However, Ballard did not report the incident to any supervisors or managers and, as far as he knew, no UP employees knew about the alleged harassment. Additionally, Ballard admitted that the three men's behavior on March 21 was not typical. In the incident report, Ballard stated that he did not know what prompted them to do what they did. He said that it was "not a normal occurrence for them to joke around like that."
Nevertheless, Ballard alleged that UP knew or should have known that Oliver Becenti, Ted Tom, and Johnny Adison had a propensity to harass employees. He asserted that at least two other employees were harassed. The record includes the affidavit of David Duncan, a UP employee who worked with Becenti, Tom, Adison, and Ballard during the time in question. According to Duncan, Adison "`goosed'" or grabbed the buttocks of employees on several occasions while the employees walked down a UP office hallway. Duncan claimed he was one of the employees that was "goosed." Duncan alleged that UP should have noticed this behavior because it occurred in the hallway near UP supervisors' offices. However, Duncan did not report this behavior to any UP supervisors or managers, nor did he actually know whether any UP supervisors or managers saw this behavior.
Ballard claims that exhibit 25 in the record provides evidence that UP was put on notice of the three men's dangerous propensities to harass coworkers. It is unclear from the record what exhibit 25 is. Exhibit 25 is unsworn, unsigned, undated, and unaddressed. It is labeled as "Report of Complaint offered by Plaintiff in Federal Court litigation." It apparently refers to incidents of name-calling:
This complaint was forwarded to Jerry D. Swore@ UP, Greg A. Lemmerman@ UP and to Craig Domski for resolution.
Vicki Toledo came up to me and said that she wanted to talk to me about something that had been said on the bus. I asked her what the problem was. She said that Ted Tom had said something *52 on the bus and that she wanted something done right now. I told her that after the job briefing that I would get Ted Tom and her together and see what the problem was. After job briefing we got together and tried to find out just what the problem was. Vicki then said that she was told by Tina Curley that Ted Tom had said something about Oliver Becennti [sic] and Vicki Toledo having a baby together and that it was supposed to be a rail dog or puppy. I asked Ted if this was true and he said he did not say anything. That it was Glen Wagon that had said it. I then got Glen in my truck and asked him what was said. He said that it was someone else on the bus making remarks about Oliver on the bus. Vicki and Ted [a]nd Glen both talked to each other in Navajo leaving me and Steve Busch both in the dark. Neither one of us are fluent in Navajo. This was all hear say [sic] to Vicki because she was not on that bus. This was all told to her by Tina Curley. I also addressed this issue at job briefing, and this was not acceptable at any time on the UPRR.

Victoria Toledo reported accusations from Ted Tom stating that the women that work for the gang are their whores and that is how they get pregnant. They call themselves the Rail Dogs and that the women are carrying Rail Dog babies. The harassing comments were brought to Jerry Swore's attention and he just commented that they are a lot of kids on the bus and he can just talk with the guy.

(Emphasis in original.)
UP moved for summary judgment. After a hearing, the court granted UP's motion. It concluded that Ballard failed to produce sufficient evidence indicating that UP knew or should have known that any of the three men had a propensity for violence or a proclivity for actions which would have resulted in the action and injury to Ballard. The court stated, "The fact that one of these co-workers may have goosed or grabbed people's asses during the week before this incident does not rise to the level of the harassment as alleged by [Ballard] and which would have reasonably put [UP] on notice."

ASSIGNMENT OF ERROR
Ballard asserts the district court erred in granting UP's motion for summary judgment.
In its brief, UP raised the doctrine of res judicata as a defense. UP raised this issue for the first time on appeal and did not plead this as a defense at the trial court level. Additionally, UP did not cross-appeal. Res judicata is an affirmative defense which must ordinarily be pleaded to be available.[5] And while we may raise the issue of res judicata sua sponte,[6] it is infrequently done.[7] As such, we decline to consider the res judicata issues in the present appeal.

STANDARD OF REVIEW
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled *53 to judgment as a matter of law.[8]
In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[9]

ANALYSIS
As an initial matter, we note that in disposing of a claim controlled by FELA, a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the act, but substantive issues concerning a claim under FELA are determined by the provisions of the act and interpretive decisions of the federal courts construing FELA.[10]
Under FELA, railroad companies are liable in damages to any employee who suffers injury during the course of employment when such injury results in whole or in part due to the railroad's negligence.[11] This court has stated that to recover under FELA, an employee must prove the employer's negligence and that the alleged negligence is a proximate cause of the employee's injury.[12]
FELA has been interpreted to reach at least some intentional torts.[13] Two theories of liability are recognized in FELA cases involving intentional assaults by fellow employees: The first theory is respondeat superior. This theory provides that a FELA plaintiff may prevail in an intentional tort case by showing that the intentional tort was committed in furtherance of the employer's objectives. The second theory is direct negligence. Under the direct negligence theory, the employer is liable if the employer was negligent in hiring, supervising, or failing to fire the employee.[14] To prove the railroad's negligence, the plaintiff must show that the railroad had knowledge of the employee's propensities and failed to act on the information.[15] In other words, the railroad employer is liable for failing to prevent reasonably foreseeable danger to an employee from intentional or criminal misconduct.[16]

LIABILITY UNDER FELA RESPONDEAT SUPERIOR
Ballard does not argue that UP was negligent based upon respondeat superior, and it is clear that that theory does not apply to the facts of this case. Regardless, there is no dispute that the three men were acting entirely upon their own impulses with no benefit to UP.[17]

LIABILITY UNDER FELA DIRECT NEGLIGENCE
Ballard argues that it is reasonable, however, to infer that UP knew or *54 should have known about the three men's propensities to harass and to be violent and that therefore, UP was negligent in failing to supervise its employees. We disagree.
A railroad employer may be liable under the direct negligence theory if the railroad employer negligently hired, supervised, or failed to provide a safe workplace. A plaintiff's burden is thus twofold: the plaintiff must show both that (1) the employee had a propensity for the type of behavior that caused the plaintiff harm and (2) the employer railroad knew of this propensity.[18]
A somewhat similar situation was presented in Persley v. National R.R. Passenger Corp.[19] There, the plaintiff, an employee of Amtrak, was sexually assaulted by a fellow employee and sued Amtrak under FELA. The plaintiff alleged that the assault was caused in part by Amtrak's negligence. The court granted Amtrak's motion for summary judgment, reasoning that although the coemployee may have had a general reputation with a number of his supervisors for being flirtatious and a "`womanizer,'"[20] there was no evidence that either the plaintiff or any other Amtrak employee had ever previously reported any incidents of harassment involving the coemployee to any Amtrak supervisor.
In another factually similar case, Francisco v. Burlington Northern R.R. Co.,[21] the Eighth Circuit held that the plaintiff failed to establish a genuine issue of fact as to whether his employer knew or should have known about an unsafe or potentially unsafe working condition. In that case, the plaintiff sued his employer, alleging FELA violations for injuries he sustained when his supervisor hit him on the head with a hardhat. The plaintiff alleged that his employer negligently failed to provide a safe work environment. In support of his allegations, the plaintiff submitted his affidavit and the affidavit of two other employees. The affidavits indicated that the supervisor's treatment of other employees commonly included hitting, pinching, and shoving, as well as grabbing or kicking at the buttocks or groin area of the employees.
Despite this evidence, the Eighth Circuit held that the plaintiff failed to prove as a matter of law that his employer knew or should have known about the supervisor's dangerous propensities. The court reasoned that the affidavits indicated at best that other employees merely witnessed the supervisor's behavior. The court noted that the mere fact that other employees were "present during one or more unspecified acts of `horseplay' by [the supervisor]even assuming they actually saw the alleged `horseplay'is too generalized and vague"[22] to establish a genuine issue of material fact that the employer knew or should have known the supervisor created a foreseeable risk of injury to its employees.
The Eighth Circuit found it significant that the plaintiff clearly admitted that he never complained about his supervisor's conduct prior to his injury, he had never received any complaints regarding the supervisor's behavior in his capacity as a union representative, and he had never *55 heard or seen the supervisor engage in such behavior before. The Eighth Circuit also questioned whether the "`horseplay' and other physical conduct alleged by [the plaintiff] could even create the sort of dangerous condition in the work place from which a reasonable foreseeability of harm could be inferred."[23]
In the present case, Ballard failed to prove that UP knew or should have known prior to the incident that Becenti, Tom, and Adison had dangerous propensities. Prior to this incident, neither Ballard nor any other UP employee had reported any inappropriate behavior regarding these three men to UP. Further, the record does not disclose that the three men had a history of violent acts or of sexual harassment or that their supervisors were aware of facts which would have led them to suspect that the three men might engage in such conduct. Ballard has produced no evidence to support an inference that UP was aware of any dangerous propensities of the three men.
Ballard's claim that UP should have known is based on one other employee's affidavit stating he was "goosed" by one of the three men and on exhibit 25, which allegedly demonstrates that UP was aware that Tom called women "whores." Even viewed in a light most favorable to Ballard, this evidence, first, is insufficient to support an inference that Becenti, Tom, and Adison had dangerous propensities. None of the evidence suggests that Becenti ever participated in the alleged harassment. Second, nothing in the record establishes a reasonable inference that the behavior that gave rise to this case was foreseeable. The testimony in the affidavit falls short of establishing any proof that UP knew that Adison had grabbed the buttocks of employees in the UP hallway. Ballard himself agreed that the three men's behavior on March 21, 2005, was not typical and that he did not know what made the men act this way. As the Federal District Court said, this was a one-time incident.
Ballard also argues that UP was negligent for not training its employees on its policies to not harass or touch fellow employees. Ballard provides little in the way of case law or evidence to support this argument. We conclude that this argument is without merit.
After reviewing the record, we conclude there is no evidence from which a jury could infer that UP knew or should have known that the three men had a propensity to commit such acts.[24] As such, UP was not negligent.

CONCLUSION
Ballard failed to prove that UP was negligent. As such, the district court order is affirmed.
AFFIRMED.
NOTES
[1] 45 U.S.C. §§ 51 through 60 (2006).
[2] Ballard v. Union Pacific R. Co., No. 8:06CV718, 2008 WL 1990787 (D.Neb. May 5, 2008).
[3] Id. at *2 n. 3.
[4] Id. at *2.
[5] DeCosta Sporting Goods, Inc. v. Kirkland, 210 Neb. 815, 316 N.W.2d 772 (1982).
[6] Swift v. Dairyland Ins. Co., 250 Neb. 31, 547 N.W.2d 147 (1996).
[7] Strom v. City of Oakland, 255 Neb. 210, 583 N.W.2d 311 (1998).
[8] Holsapple v. Union Pacific RR. Co., 279 Neb. 18, 776 N.W.2d 11 (2009).
[9] Id.
[10] Deviney v. Union Pacific RR. Co., 18 Neb. App. 134, 776 N.W.2d 21 (2009). See McNeel v. Union Pacific R.R. Co., 276 Neb. 143, 753 N.W.2d 321 (2008).
[11] McNeel v. Union Pacific R.R. Co., supra, note 10.
[12] Id.
[13] See, Lancaster v. Norfolk and Western Ry. Co., 773 F.2d 807 (7th Cir.1985); Naidoo v. Union Pacific Railroad, 224 Neb. 853, 402 N.W.2d 653 (1987).
[14] See id.
[15] See id.
[16] Naidoo v. Union Pacific Railroad, supra note 13.
[17] See Higgins v. Metro-North R. Co., 318 F.3d 422 (2d Cir.2003).
[18] Murphy v. Metropolitan Transp. Authority, 548 F.Supp.2d 29 (S.D.N.Y.2008). See Persley v. National R.R. Passenger Corp., 831 F.Supp. 464 (D.Md.1993).
[19] Persley v. National R.R. Passenger Corp., supra note 18.
[20] Id. at 467.
[21] Francisco v. Burlington Northern R.R. Co., 204 F.3d 787 (8th Cir.2000).
[22] Id. at 789.
[23] Id. at 790 n. 4 (emphasis in original).
[24] See Brooks v. Washington Terminal Co., 593 F.2d 1285 (D.C.Cir.1979).