Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/28/2021 09:08 AM CST

- 439 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

The Alliance Group, Inc., appellee, v. NGC Group, Inc., appellant, and Justin Hernandez, an individual, appellee.

___ N.W.2d ___

Filed December 28, 2021.    No. A-21-139.

1. **Breach of Contract: Damages.** A suit for damages arising from breach of a contract presents an action at law.

2. **Judgments: Appeal and Error.** In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong.

3. ____: ____. In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

4. **Judgments: Claim Preclusion: Issue Preclusion: Appeal and Error.** The applicability of claim and issue preclusion is a question of law. On a question of law, an appellate court reaches a conclusion independent of the court below.

5. **Damages: Appeal and Error.** The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved.

6. **Damages: Judgments: Appeal and Error.** With respect to damages, an appellate court reviews the trial court's factual findings under a clearly erroneous standard of review.

7. **Statute of Frauds.** A memorandum, in order to make enforceable a contract under the statute of frauds, may be any document or writing, formal or informal, signed by the party to be charged or by the party's agent actually or apparently authorized thereunto, which states with reasonable certainty (1) each party to the contract either by his or her own name or by such a description as will serve to identify him or her, or

- 440 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

by the name or description of the party's agent; (2) the land, goods, or other subject matter to which the contract relates; and (3) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made.

8. ____. Under the leading object rule, a promise to answer for the debt of another will be valid, although not in writing, when the principal object of the party promising to pay the debt is to promote his or her own interests—and not to become a guarantor or surety—and when the promise is made on sufficient consideration.

9. ____. The consideration to support an oral promise to pay the debt of another must operate to the advantage of the promisor. It must also place him or her under a pecuniary obligation to the promisee independent of the original debt, which obligation is to be discharged by the payment of that debt.

10. ____. For the leading object of the promise to be in the promisor's own interests, the promisor need not receive cash in hand from the promise. However, the path of benefits flowing to the promisor must not be so circuitous or uncertain that obtaining those benefits cannot be said to have been his or her main purpose in making the promise, and the promisor's advantage must be served in a straightforward way in order for the leading object rule to apply.

11. **Pleadings: Appeal and Error.** Generally, an affirmative defense not raised or litigated in the trial court cannot be urged for the first time on appeal.

12. **Claim Preclusion: Appeal and Error.** An appellate court may raise the issue of claim preclusion sua sponte, although it is infrequently done.

Appeal from the District Court for Douglas County: THOMAS A. OTEPKA, Judge. Affirmed.

Gregory S. Frayser, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellant.

Thomas M. White and Amy S. Jorgensen, of White & Jorgensen, for appellee The Alliance Group, Inc.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

The Alliance Group, Inc. (Alliance), filed a complaint against NGC Group, Inc., and its owner, Justin Hernandez. The

- 441 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

complaint alleged claims for breach of contract and promissory estoppel regarding NGC Group's failure to reimburse Alliance in accordance with an oral promise made by Hernandez. The Douglas County District Court found that Hernandez' oral promise to reimburse Alliance was not barred by Nebraska's statute of frauds and that NGC Group breached that promise. The court awarded Alliance $180,381.82 in damages, plus postjudgment interest. NGC Group appeals the district court's determination that under the leading object rule, the oral promise was not barred by the statute of frauds. Additionally, NGC Group contends that Alliance's damages should have been limited to $104,721 based on a proof of claim Alliance filed in a separate bankruptcy action. We affirm.

## II. BACKGROUND

### 1. Relationships Among Parties and Other Entities

This case involves the intersecting relationships between several business entities and their owners and officers. Before setting forth the operative facts at issue, we will describe the entities and the relationships between them that form the backdrop for this dispute.

### (a) Alliance and Acass Systems

The dispute in this case involved an obligation owed to Alliance pursuant to a contract between Alliance and Acass Systems, LLC. Alliance is a Nebraska corporation that provides payroll and other employer support services to its clients. Acass Systems was a Nebraska-based limited liability company involved in stage fabrication and set construction for concerts and other performance events. According to testimony given at trial, Acass Systems filed for bankruptcy at some point in August 2018. Alliance did not name Acass Systems as a party to this action.

Prior to its bankruptcy, Acass Systems was a client of Alliance. On December 21, 2016, Alliance and Acass Systems entered into a "Client Services Agreement" in which Acass

- 442 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

Systems agreed to pay a fee to Alliance for certain services, including the distribution and deposit of payroll checks to Acass Systems' employees. Alliance would distribute payroll to Acass Systems' employees from its own account, and the agreement required Acass Systems to reimburse Alliance "for all wages, payroll taxes[,] and benefit costs incurred by or payable to all" Acass Systems employees.

### (b) NGC Group; DIV Investments, LLC; and Acass Systems

NGC Group is a Nebraska corporation, owned wholly by Hernandez, engaged primarily in commercial construction. Hernandez also owns DIV Investments, LLC, a Nebraska limited liability company in the business of lending to and investing in other businesses. While the two companies are separate entities, NGC Group's chief financial officer, who also performed work for DIV Investments, testified that NGC Group would issue loans to DIV Investments, and these loans financed DIV Investments' loans to other entities.

Over the course of 2017 and 2018, Acass Systems experienced financial difficulties impacting its ability to meet its biweekly payroll obligations owed under the agreement with Alliance. To combat these financial shortfalls, Acass Systems sought out financing options and came to rely on DIV Investments as its "main lender." Acass Systems' former chief operating officer testified that "payroll was probably the main course for" the money lent by DIV Investments.

The record includes several promissory notes evidencing multiple loans issued by DIV Investments to Acass Systems in 2017 and 2018. Although these promissory notes included a provision allowing for the conversion of the loan principal into an equity interest in Acass Systems, the record does not indicate that this right was ever exercised by DIV Investments. According to NGC Group's chief financial officer, DIV Investments "utilize[d] loans from NGC [Group] in order to fund its loans to [Acass Systems]," and these loans from

- 443 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

DIV Investments "were used for [Acass Systems'] payroll." NGC Group's chief financial officer also had an office at Acass Systems during the "due diligence period" of this arrangement, and NGC Group provided its corporate credit card to Acass Systems to assist in covering expenses.

### (c) NGC Group's Role in Funding
### Acass Systems' Payroll

According to Alliance's owner, Michael Mapes, "[a]lmost all of [Alliance's] clients [would] pay their payroll invoice through an . . . automatic clearing house" which Mapes described as "an electronic check." After that payment was received, Alliance would then "pull the money out of [the client's] account" and "send the direct deposits . . . for [the client's] employees from [Alliance's] account." Mapes testified that funds delivered through an "automatic clearing house" were often not "good for . . . up to two days." Alliance maintained a policy that if a client's payment in this manner ever "bounced," Alliance would thereafter require that client to "go on good funds." Mapes described that to "go on good funds" meant that the client must provide for "either a wire transfer or a cashier's check in [Alliance's] account before [Alliance would] release the direct deposits for . . . their payroll." Mapes testified that Alliance generally did not advance payroll funding before receiving a payment from its clients, but the record indicates that Alliance made such an advance to Acass Systems on at least one occasion.

At some point in the course of Acass Systems' contract with Alliance, one of Acass Systems' "automatic clearing house" payments bounced. Although our record does not show the specific date of this event, there is no dispute that, starting some time before March 30, 2018, Alliance required Acass Systems to prepay its payroll obligations with "good funds" before Alliance would distribute payroll checks to Acass Systems' employees. Acass Systems' process of making this prepayment to Alliance began with an evaluation of whether or not

- 444 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

Acass Systems "had the money in [its] account" or if it "had a deficit." If there was a deficit, then Acass Systems "would go to DIV [Investments] for the financing . . . to make that payroll." Testimony by Hernandez and NGC Group's chief financial officer indicated that Acass Systems' payroll funding was typically accomplished by NGC Group providing financing for DIV Investments, which would then use that financing to make funds available for Acass Systems. Subsequently, "[t]he money [from DIV Investments] would come into the [Acass Systems] account" and then "go to the Alliance account." Upon receiving the funding, Alliance would then make the required payroll deposits. Mapes testified that Alliance was "constantly talking" with "representatives of . . . Hernandez" to coordinate the time and manner in which Acass Systems' payroll obligation would be paid, and Mapes communicated directly with Hernandez regarding these matters as well.

In contrast to this typical arrangement, NGC Group made four direct payments to Alliance by wire transfer between March 30 and June 8, 2018. There is no dispute that these payments were for Acass Systems' payroll obligation to Alliance, and Hernandez testified these direct payments from NGC Group were "sent on behalf of the loan[s] that DIV [Investments] made to [Acass Systems]." Several witnesses testified that these direct payments were made to reduce potential delays in getting paychecks to Acass Systems' employees. Mapes testified that Alliance's primary concern was having "good funds" come in, and "it didn't matter to [him]" where those funds originated.

### 2. Payroll for June 22, 2018

The core dispute of this case concerns Acass Systems' payroll for June 22, 2018. Earlier that same week on Tuesday, June 19, Alliance's payroll manager sent an email to Hernandez and NGC Group's chief financial officer at their respective NGC Group email addresses. In relevant part, the email stated that Acass Systems had "let [Alliance] know that payroll funding will be coming from you again." The email included wire

- 445 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

instructions and an invoice billing $180,381.82 for the June 22 payroll. Hernandez emailed a response on Wednesday, June 20, which stated in part, "This will not be funded until Friday, we will provide update on timing tomorrow."

On June 21, 2018, Mapes called Hernandez to discuss the matter of the June 22 payroll. By June 21, Alliance had yet to receive the required funding for payroll and would not "release the [payroll] checks" until it had received "good funds." Mapes testified that he understood that "NGC [Group] and [Hernandez] [were] going to make the payment" as they had for previous payrolls. According to Mapes, Hernandez said that Acass Systems' payroll "couldn't get funded till [June 22]," and Mapes responded that Alliance would "hold the checks" until that day. Hernandez then replied that there would be "even more trouble" with Acass Systems' employees if the checks were delayed, and according to Mapes, Hernandez then asked, "Is there any way you can send the [paychecks] and I'll make sure you get paid by [June 22]?" Mapes understood Hernandez to have made "an express, clear promise . . . that he would cause Alliance to be paid back" if Alliance made the payroll deposits on June 21, and Alliance proceeded to advance the payroll funding that same day.

Conversely, Hernandez denied making "a personal promise that [he] was going to cover payroll" or a promise that either NGC Group or DIV Investments would cover the payroll. Rather, he testified that there was a loan agreement "in process" with Acass Systems, and if Acass Systems accepted the loan and executed a new promissory note, the required funds would be transferred to Alliance as they had previously. Hernandez testified that he had been unable to come to terms for a new loan agreement with Acass Systems and therefore no transfer of funds to Alliance was ever made.

Following this phone call, Mapes sent an email on June 24, 2018, communicating that he believed Hernandez had promised to transfer the funds for the June 22 payroll if Alliance would "front $185,000 for payroll," and he requested that

- 446 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

Hernandez "have this invoice paid first thing" on June 25. Hernandez did not reply to this email, and no further communications regarding the payroll occurred prior to the filing of this action.

### 3. Subsequent History and July 2019 Complaint

At some point in August 2018, Acass Systems filed for bankruptcy, although the record does not indicate the court in which Acass Systems filed the petition. Mapes confirmed in his testimony that Alliance filed a proof of claim in this bankruptcy and claimed approximately $104,721 as the amount due from Acass Systems. Hernandez and NGC Group's chief financial officer testified that DIV Investments also filed a claim in Acass Systems' bankruptcy for $5,325,078.70. No documents relating to Acass Systems' bankruptcy were offered or received as evidence at trial.

On July 10, 2019, Alliance filed a complaint in the Douglas County District Court against NGC Group and Hernandez seeking to recover $180,381.82 and interest thereon, costs, and attorney fees. Alliance's complaint alleged breach of contract and, in the alternative, promissory estoppel. Alliance claimed that Hernandez made a promise to reimburse Alliance for the June 22, 2018, payroll and argued that this promise should be enforced. NGC Group and Hernandez subsequently filed an answer denying Alliance's claims and arguing in part that these claims were barred by the statute of frauds. NGC Group and Hernandez also reserved "the right to amend or supplement its affirmative defenses with affirmative defenses not listed" in the answer "should they become available or apparent during the course of this litigation," but no such amended pleading was ever filed.

Trial began on November 4, 2020, and ended on November 5. The district court entered a written judgment on January 20, 2021, and found in favor of Alliance. The court found that "Hernandez made a promise on behalf of NGC [Group]

- 447 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

to repay Alliance for the June 2018 Payroll, not to offer Acass [Systems] another loan." The court further concluded that the promise given by Hernandez did not comply with the requirements of Neb. Rev. Stat. § 36-202 (Reissue 2016) that a promise to answer for the debt of another be in writing or sufficiently evidenced by some note or memorandum, as the invoice and emails offered by Alliance did not sufficiently detail the essential terms of Hernandez' promise. However, the court found that Hernandez' promise "was made to advantage NGC [Group]" through its lending relationship with DIV Investments and DIV Investments' corresponding lending relationship with Acass Systems. The court reasoned that Acass Systems' default on its loans from DIV Investments could then result in DIV Investments' default on its loans from NGC Group, and NGC Group thus "stood to either benefit or suffer depending on the success or failure of" Acass Systems. The court also noted that Acass Systems utilized the services of NGC Group's chief financial officer and NGC Group's corporate credit card. Based on this evidence, the court concluded that "the leading object rule applies as an exception to the statute of frauds" in this case and that Hernandez' promise, given on behalf of NGC Group, was an enforceable contract. The court awarded Alliance $180,381.82 in damages and postjudgment interest; the court determined that Alliance was not entitled to prejudgment interest.

NGC Group now appeals.

### III. ASSIGNMENTS OF ERROR

NGC Group claims that the district court erred in (1) determining that Alliance's claim was not barred by the statute of frauds, (2) applying the leading object rule to except the oral promise from the requirements of the statute of frauds, (3) not limiting Alliance's damages to $104,721 pursuant to Alliance's proof of claim filed in Acass Systems' August 2018 bankruptcy action, and (4) failing to apply the doctrines of claim preclusion and issue preclusion to limit Alliance's damages to $104,721.

- 448 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

## IV. STANDARD OF REVIEW

[1-3] A suit for damages arising from breach of a contract presents an action at law. *Bloedorn Lumber Co. v. Nielson*, 300 Neb. 722, 915 N.W.2d 786 (2018). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Id.* In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Id.*

[4] The applicability of claim and issue preclusion is a question of law. *Hill v. AMMC, Inc.*, 300 Neb. 412, 915 N.W.2d 29 (2018). On a question of law, an appellate court reaches a conclusion independent of the court below. *Id.*

[5,6] The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of the damages proved. *Pan v. IOC Realty Specialist*, 301 Neb. 256, 918 N.W.2d 273 (2018). With respect to damages, an appellate court reviews the trial court's factual findings under a clearly erroneous standard of review. *Id.*

## V. ANALYSIS

### 1. Enforceability of Promise by Hernandez to Repay Alliance

#### (a) Hernandez' Promise

Although NGC Group states that it "disputes but does not appeal" the district court's finding that Hernandez made a promise on its behalf to repay Alliance, brief for appellant at 10, we examine the district court's findings on this matter as part of our analysis.

The district court found that "Hernandez made a promise on behalf of NGC [Group] to repay Alliance for the June

- 449 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

2018 Payroll, not to offer Acass [Systems] another loan." As previously described, the testimony given at trial shows that representatives of Alliance and NGC Group were in frequent communication regarding the manner in which Acass Systems' payroll obligations would be funded. In the months leading up to the disputed payroll, NGC Group wired funding directly to Alliance on four occasions for Acass Systems' payroll obligation. Alliance's payroll manager directed his June 19, 2018, email to Hernandez and NGC Group's chief financial officer at their NGC Group email addresses, and Mapes likewise directed his June 24 email to Hernandez' NGC Group email address. We also note that Mapes testified that he believed Hernandez promised to have the payroll invoice paid in full without regard to whether Acass Systems accepted another loan agreement. Mapes' testimony also indicated that if he had believed Hernandez had instead promised to "make funds available or . . . offer a loan to [Acass Systems]," such a promise would not have caused him to release payroll funding to Acass Systems' employees without having received "good funds."

While the parties dispute the characterization of the phone call on June 21, 2018, our standard of review requires that we consider the evidence and inferences drawn therefrom in the light most favorable to the successful party and resolve all evidentiary conflicts in the successful party's favor. See *Bloedorn Lumber Co. v. Nielson*, 300 Neb. 722, 915 N.W.2d 786 (2018). In light of the evidence offered at trial, we cannot say the district court was clearly wrong in concluding that Hernandez orally promised, on behalf of NGC Group, to repay Alliance for the June 22 payroll.

### (b) Statute of Frauds and Leading Object Rule

The heart of this dispute centers on the issue of whether Nebraska's statute of frauds bars the enforcement of Hernandez' oral promise to repay Alliance. NGC Group claims that the statute of frauds should bar enforcement of Hernandez'

- 450 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

promise and that the district court erred in finding that the leading object rule applied in this case.

[7] Section 36-202 provides in pertinent part that "every special promise to answer for the debt, default, or misdoings of another person" "shall be void, unless such agreement, or some note or memorandum thereof, be in writing." The Nebraska Supreme Court has explained:

"'A memorandum, in order to make enforceable a contract within the Statute, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty, (a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and (b) the land, goods or other subject-matter to which the contract relates, and (c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made.'"

*Hansen v. Hill*, 215 Neb. 573, 578, 340 N.W.2d 8, 12 (1983) (quoting *Ord v. Benson*, 163 Neb. 367, 79 N.W.2d 713 (1956)).

The district court found that Hernandez' oral promise was not supported by sufficient writings to satisfy the statute of frauds, and we agree with this conclusion. Hernandez' promise on behalf of NGC Group was a "promise to answer for the debt, default, or misdoings of" Acass Systems, and thus, it needed to be supported by writings stating the terms of the contract with reasonable certainty. See § 36-202. The only writings corresponding to the payroll for June 22, 2018, were the previously described emails exchanged between the parties' representatives and the invoice attached to the June 19 email from Alliance's payroll manager. As the district court observed, these writings did not specifically identify the entity that would repay Alliance, nor did they indicate the specific time or manner of repayment. The district court did not err in concluding the statute of frauds was not satisfied.

- 451 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

[8] However, the district court further found that the "leading object rule" applied as an exception to the statute of frauds in this case and rendered Hernandez' oral promise enforceable. Under the leading object rule, a promise to answer for the debt of another will be valid, although not in writing, when the principal object of the party promising to pay the debt is to promote his or her own interests—and not to become a guarantor or surety—and when the promise is made on sufficient consideration. *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008).

[9] Under this leading object exception to the statute of frauds, the consideration to support an oral promise to pay the debt of another must operate to the advantage of the promisor. *Id.* It also must place him or her under a pecuniary obligation to the promisee independent of the original debt, which obligation is to be discharged by the payment of that debt. *Id.* "The Restatement (Second) of Contracts explains that when the leading object of the promise is to promote the promisor's own interests, then the promisor does not need the protection against his own generous impulses afforded by the statute of frauds." *Christian v. Smith*, 276 Neb. at 879, 759 N.W.2d at 459 (citing Restatement (Second) of Contracts § 116 (1981)).

[10] For the leading object of the promise to be in the promisor's own interests, the promisor need not receive cash in hand from the promise. *Christian v. Smith, supra*. However, the path of benefits flowing to the promisor must not be so circuitous or uncertain that obtaining those benefits cannot be said to have been his or her main purpose in making the promise. *Id.* As a matter of practicality, the promisor's advantage must be served in a straightforward way in order for the main purpose rule to apply. *Id.* "We treat the terms 'leading object' and 'main purpose' synonymously." *Id.* at 879, 759 N.W.2d at 460.

In *Christian v. Smith, supra*, the plaintiff obtained lines of credit at a Nebraska bank, which allowed the defendant, who could not secure his own credit, to purchase cattle and have them fed for sale. The defendant promised to pay the

- 452 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

plaintiff a fee for each lot of cattle purchased, as well as pay the plaintiff's bank debt as the cattle were sold. However, once all the cattle were sold, there were insufficient funds to pay the plaintiff's lines of credit and a judgment was obtained against him; the plaintiff then sought to recover damages from the defendant. The Nebraska Supreme Court determined that the defendant's main purpose in his oral promise to pay plaintiff's debt was to serve defendant's own interests, which was to garner profits from the sale of fattened cattle, not to become plaintiff's guarantor. The court concluded the oral agreement between the parties fell "within the ambit of the leading object rule" and therefore did not need to be in writing to be enforceable. *Id*. at 880, 759 N.W.2d at 460.

Similarly, in the present case, the district court concluded that the leading object rule applied based primarily on NGC Group's role in financing DIV Investments' loans to Acass Systems. Even though NGC Group "did not have loan agreements" or other direct interests in Acass Systems, the court concluded that NGC Group nevertheless "stood to either benefit or suffer depending on the success or failure" of Acass Systems, as Acass Systems' default on the loans from DIV Investments could then impact DIV Investments' ability to repay its own loans from NGC Group. The court also noted that DIV Investments "filed a proof of claim in [Acass Systems'] bankruptcy in the amount of approximately $5 million" and consequently "suffered a loss" when it was unable to recover the total amounts owed by Acass Systems.

NGC Group argues that the leading object rule does not apply in this case because it "did not receive a direct benefit from" Hernandez' promise. Brief for appellant at 14. NGC Group describes that DIV Investments remained obligated to repay its loans to NGC Group "without regard to [Acass Systems'] repayment to" DIV Investments. *Id.* Thus, because DIV Investments would continue to be responsible for its debts to NGC Group, a promise that NGC Group would repay

- 453 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

Alliance on behalf of Acass Systems would not "afford [NGC Group] any advantage" or otherwise "promote any purpose or interest" beneficial to NGC Group. *Id.* at 15.

We find that the district court was correct in applying the leading object rule in this case. NGC Group and DIV Investments are both owned by Hernandez, and NGC Group's lending relationship with DIV Investments establishes flows of funds both originating from and returning to NGC Group through DIV Investments' corresponding lending relationships with third-party entities such as Acass Systems. As the district court observed, Hernandez' testimony established that DIV Investments suffered a substantial loss following Acass Systems' default and bankruptcy. While DIV Investments may still remain obligated on its loans from NGC Group, it is reasonable to infer that DIV Investments' loss stemming from Acass Systems' default would in turn impact DIV Investments' ability to repay its loans from NGC Group on time and in full amount. NGC Group thus had its own business advantage in promising to repay Alliance in this case; Acass Systems' continued operation through the maintenance of its payroll would sustain its ability to pay back the loans from DIV Investments, and these moneys would flow back to NGC Group through DIV Investments' own loan repayments. The evidence in this case sufficiently establishes that the leading object of the promise by Hernandez on behalf of NGC Group was to serve NGC Group's own interests. Alliance's claim was therefore not barred by the statute of frauds, and the district court did not err in applying the leading object rule.

## 2. Damages

NGC Group also argues that the district court erred in awarding Alliance $180,381.82 and claims that the district court should have limited Alliance's damages to $104,721 pursuant to Alliance's proof of claim filed in Acass Systems' bankruptcy proceeding.

- 454 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

(a) Claim Preclusion and Issue Preclusion

[11,12] NGC Group's argument regarding the amount of damages awarded to Alliance primarily concerns the district court's failure to apply the doctrines of claim preclusion and issue preclusion. Generally, an affirmative defense not raised or litigated in the trial court cannot be urged for the first time on appeal. See *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014). See, also, *Ballard v. Union Pacific RR. Co.*, 279 Neb. 638, 781 N.W.2d 47 (2010) (claim preclusion is affirmative defense which must ordinarily be pleaded to be available). However, an appellate court may raise the issue of claim preclusion sua sponte, although it is infrequently done. See *id.*

NGC Group failed to plead either claim preclusion or issue preclusion as affirmative defenses and likewise failed to expressly argue at trial that either doctrine barred Alliance's claim or otherwise limited Alliance's recovery to $104,721. Although counsel for NGC Group referenced Alliance's proof of claim in its closing argument, this argument focused primarily on Alliance's claim for $104,721 in Acass Systems' bankruptcy as the appropriate measure for Alliance's damages rather than for its preclusive effect. We conclude that NGC Group did not sufficiently present either affirmative defense at the district court level.

Moreover, even if we elected to review whether Alliance's proof of claim should have preclusive effect under either doctrine, our record is not sufficient to determine the applicability of either claim preclusion or issue preclusion. No documents relating to Acass Systems' bankruptcy were offered or received as evidence at trial. Instead, Alliance's proof of claim was used to refresh Mapes' recollection of Acass Systems' debt to Alliance. As pertinent to this issue, the record provides only that Acass Systems filed for bankruptcy in some jurisdiction at some point in August 2018 and that Alliance filed a proof of claim in this bankruptcy claiming that $104,721 remained due from Acass Systems. No further evidence or testimony

- 455 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
ALLIANCE GROUP v. NGC GROUP
Cite as 30 Neb. App. 439

was provided regarding Alliance's claim in Acass Systems' bankruptcy. NGC Group failed to adequately develop the record on this matter, and we accordingly decline to address NGC Group's assertion that claim and issue preclusion limit Alliance's damages in this case.

### (b) Measurement of Damages

We proceed now to examine the district court's award of $180,381.82 in damages to Alliance. The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of the damages proved. *Pan v. IOC Realty Specialist*, 301 Neb. 256, 918 N.W.2d 273 (2018). With respect to damages, an appellate court reviews the trial court's factual findings under a clearly erroneous standard of review. *Id.*

The record includes the invoice attached to the email sent to Hernandez by Alliance's payroll manager on June 19, 2018. The total amount billed in this invoice was $180,381.82. While we note that the amount of Alliance's damages was disputed at trial on the basis of the $104,721 claimed by Alliance in Acass Systems' bankruptcy, we find that the district court's award of $180,381.82 was sufficiently supported by the evidence offered at trial and thus was not clearly erroneous.

### VI. CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court in all respects.

Affirmed.